NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHARLES LOMACK; HAROLD J.          :
BANE, JR.; RAMON DOMINGUEZ;
JAMES P. WILLIS; KEVIN L.          :
JOHNSON; PAUL T. MAZZA;
KENNETH REEDS; GARY HOLMAN;        :
LUTHER ROBERSON, III;
GERRELL ELLIOTT, CLARENCE R.       :
BRUTON; JAMES GILES; DEAN
GATTI; PETER J. COONEY;            :
JOHN P. MELANI; GREGORY
HIGHSMITH; JUAN H. RAMOS;          :
DAYON COBBS; DEBLIN RODRIGUEZ;
RAMON RIVERA; CHARLES H. WEST;:
SCOTT WOLF; WILFREDO RIVERA;
KARREEM JACKSON; JOHN BROWN;       :       Civil Action No. 04-6085(JWB)
WYNDELL COOPER; SHANNON
McTIGHE; ASHTON ROBINSON;          :
MARK PISERCHIO; CHRIS DEMURO;
NEWARK FIREFIGHTERS UNION;         :              **O P I N I O N**
ERIC BARNES; EDWARD GRIFFITH;
LEWIS MANNING and                  :
FRANK ZIDZIUNAS,
                                   :
             Plaintiffs,
                                   :
        v.
                                   :
CITY OF NEWARK, SHARPE JAMES,
EDWARD DUNHAM, LOWELL F.           :
JONES and NORMAN J. ESPAROLINI,
                                   :
             Defendants.
                                   :

**APPEARANCES**:

> DAVID TYKULSKER & ASSOCIATES
> By:  David Tykulsker, Esquire
> 161 Walnut Street
> Montclair, New Jersey  07042
> (Attorneys for Plaintiffs)

> JoANNE Y. WATSON
> Corporation Counsel
> By:  Carolyn A. McIntosh
>      Assistant Corporation Counsel
>      Phillip Dowdell
>      Assistant Corporation Counsel
> City of Newark
> Department of Law
> 920 Broad Street, Room 316
> Newark, New Jersey  07102
> (Attorneys for Defendant)

**BISSELL**, Chief Judge


## HISTORY

This action has historical origins at least fifty years old. In the wake of World War II as more and more African-Americans migrated to northern cities, such as Newark, N.J., racial tensions between them and Newark's then predominantly white population escalated.  Those tensions reached a flashpoint in the riots of July 1967, from which many neighborhoods in Newark have not yet recovered.  The conflicts between ethnic groups generated many inequities and illegal policies which, eventually, the courts were required to address.  Regrettably, racial discrimination in public employment manifested itself in many

-2-

New Jersey cities, for example in their fire departments.  This
condition led the United States to file suit against the State of
New Jersey and several cities to eliminate such practices in fire
departments.  <u>United States v. State of New Jersey, et al</u>, Civ.
No. 77-2054, 79-184.  That action was concluded by a Consent
Decree (Exh. D-10) dated May 30, 1980, which provided, <u>inter
alia</u>:

> 1.   The defendants are compelled by law
> and by  entering into this Order acknowledge
> their obligation to, and agree they shall,
> refrain from engaging in any act or practice
> which has the purpose or <u>effect of unlawfully
> discriminating against any black or Hispanic
> employee</u> of, or any black or Hispanic
> applicant or potential applicant for
> employment with their respective fire
> departments because of such individuals'
> race, color, or national origin. Specifically
> the defendants shall not discriminate against
> any such individual in hiring, <u>assignment</u>,
> training, discipline, promotion or discharge
> because of race, color, or national origin.
> Further, defendants shall not retaliate
> against or in any respect adversely affect
> any person because that person has opposed
> discriminatory policies or practices or
> because of that person's participation in or
> cooperation with the initiation,
> investigation or litigation of any charge of
> discrimination based on race or national
> origin, or the administration of this Order.
> <u>Remedial actions and practices required by
> the terms or permitted to effectuate and
> carry out the purpose of this Order shall not
> be deemed discriminatory within the meaning
> of 42 U.S.C. 2000e-2(a)</u>.

(Emphasis added).  In paragraph 3(d) of the Consent Decree,
Newark acknowledged a goal "to fill at least sixty (60) percent

-3-

of all vacancies [for entry level firefighters] with qualified
minority applicants."  To be sure the primary focus of the
Consent Decree is on the testing of applicants and the hiring of
minorities, but its plain language also encompasses
discriminatory assignments of firefighters, the gravamen of the
case at bar.

**Events Preceding Institution of this Suit**

In 1995, the City of Newark commissioned two reports to
examine the performance of the Newark Fire Department in the 15
years of operation under the Consent Decree.  The Reports were
authored by Lezli Baskerville, Esq., an attorney practicing in
Washington, D.C.  ("D-13" or "Baskerville Report") and Rosenfarb
& Co. CPAs of Roseland, N.J. and New York City ("D-14" or
"Rosenfarb Report").  Each of these reports was submitted to the
Newark City Council in December 1995.

Ms. Baskerville's conclusions included the following:

> There are numerous firehouses in the
> City that are segregated by race.  The belief
> is that the segregation is deliberate.
> Examples were cited of the following all
> African American companies with African
> American officers in command:  Engine Company
> Nos. 7, 12, 15, 17, 19 & 29; Truck Company
> Nos. 7 and 10.  Additionally, the following
> all African American companies with white
> officers in command were cited as examples of
> the pervasive discrimination:  Engine Company
> Nos. 8, 13, 27, 29; and Truck Company Nos. 1,
> 4, and 6.  Examples were also cited of
> firehouses with at least one all white tour:
> Engine Company Nos. 6, 9, 14, 16, 17 and 19;
> Truck Company Nos. 1, 5, 8, 10, 11.

-4-

(D-13 at p. 17).

The Rosenfarb Report focused on segregated tours in firehouses, providing charts reflecting the ethnic makeup (white, black, Hispanic) of each of the 108 tours identified.  The Report included graphs as Exhibits D-1 through D-20 depicting the ethnicity of each member of each tour.  (D-14 at Exhs. D-1 through D-20).  Summarizing those graphed findings, the Rosenfarb Report stated:

> Exhibits D-1 through D-20 set forth the tour compositions of each firehouse on August 2, 1995.  The information the Department provided to us described 108 tours.  Eighty-one of the tours had a majority of white personnel, with 30 being comprised entirely of white personnel.  Fifteen of the firehouse tours were predominantly black. Only one tour had a majority of hispanics.  The remaining eleven tours did not contain a majority of any one group.  The tours consisted of both firefighters and captains.

Actually, that summary is somewhat understated in that of the tours described as "predominantly black", eight (or more than one-half) were comprised of entirely black personnel.  (<u>Id</u>.)[1]

One cannot speculate as to why the City of Newark did not respond promptly to this issue of segregated firehouses.  Perhaps its Counsel were uncertain as to how to proceed in the wake of

---

[1]     Plaintiffs' attack on the admissibility or weight of these reports, due to the recent decision of <u>Municipal Council of City of Newark v. James</u>, 183 N.J. 361 (2005), is unpersuasive in the context of the case at bar.

-5-

the United States Supreme Court's decision in Adarand
Constructors, Inc. v. Pena, 515 U.S. 200 (1995).  Perhaps other
features of these reports such as those criticizing the lack of
outreach to encourage applicants, alleged circumvention of
residency requirements, and failure to attain a sufficient total
number of minority firefighters, consumed more time and attention
in the years following 1995.  Nevertheless, Mayor Sharpe James,
at his re-inauguration speech on July 1, 2002, made it clear that
segregated firehouses should disappear from the landscape of
Newark.  In his words:

> Our Fire Department will face a mandate to
> integrate our fire houses to improve morale.
> It is inexcusable that [in] the year 2002 we
> still have segregated fire houses in the City
> of Newark, and to give firefighting and
> community services a higher priority than
> politics.  To lead this charge, to lead this
> charge a true professional firefighter Former
> Fire Chief Edward Dunham will serve as
> Director of the Newark Fire Department.  Ed
> is a career fire officer who joined the
> Department in 1970 and worked his way through
> the ranks to Captain before being named Fire
> Chief in 1998.  Since his retirement in 2000
> he has been the Department's Affirmative
> Action Specialist both during active service
> and in his current position during
> retirement.  He has been the prime mover of
> efforts to recruit and train minority
> personnel for the Department.  We plan to
> make our Fire Department the best in America
> and to honor a court order to make our Fire
> Department the mirror of the City of Newark,
> Mr. Ed Dunham.

(Exh. P-1).

     Mr. Dunham determined that a policy of transfers between

-6-

firehouses was a sound way to accomplish their desegregation.   On
November 27, 2002 he wrote to Fire Chief Lowell Jones as follows:

> "You are directed to formulate a mass
> departmental transfer list throughout Fire
> Suppression Operations.
>
> This transfer list shall include the
> following:
>
>> 1.   Reflect the diversity of the
>> department; and
>>
>> 2.   Assignment of Roving
>> Probationary Firefighters.
>
> You are to have this list completed and
> forwarded to this office on or before
> December 31, 2002."

(Exh. P-3).

Chief Jones' Department Transfer List, Exh. P-4, was crafted
as that exhibit explains;[2] however, it did not attain the goal of
integration which Dunham was pursuing.  Accordingly, Fire
Director Dunham asked Battalion Chief Raymond L. Wallace to
generate a transfer list which would attain that goal.  Wallace
did so, presenting such a list with an explanation of its origins
on January 13, 2003.  That list (Exh. P-5) is also attached to
this Opinion.  Wallace's methodology bears repeating here,
particularly in light of the strict scrutiny which this
affirmative action program must survive.

--------

[2]   P-4 is annexed hereto.  Essentially, Jones tried
unsuccessfully to achieve diversity through the assignment of new
hires and honoring those transfer requests that would promote it.
(See Second Amended Complaint at ¶¶ 63-65).

> After reviewing the transfer list submitted by Fire Chief Jones as requested by you, I note the directive as to have <u>diversity throughout the Newark Fire Department has not been achieved</u>. if Chief Jones transfer list were to be used, there would be <u>14 companies all Caucasion and 10 companies African American.</u> (see Jones list) This list does not meet the directive and is unsatisfactory.
>
> I propose a solution that would meet the mandate of diversity for all fire crews within the Department. (see 100% diversity) This would require transfers of department members to meet the objective. The transfers would be consistent across the Department, as the firefighter with the least seniority would be transferred. Some of these transfers would be made within the same firehouse, changing tours. Others would be transferred within the Battalion when possible. Be assured that every effort was made to minimize the impact on the affected firefighter.

(Emphasis in original.)

On January 15, 2003, in Executive Order No. 426 (Exh. P-6)[3] Director Dunham announced the list of transfers (consistent with Wallace's memorandum) "effective at 0800 hours on Friday, January 31, 2003." This was a unique event in the Newark Fire Department since transfers in the past had been predominantly voluntary with a significant role being played by the plaintiff unions in the granting or denial of transfer requests. As the year 2004 began, Director Dunham and Mayor James were able to announce that all of Newark's fire companies had been integrated.

---

[3]     Also attached hereto.

-8-

Several of the plaintiffs instituted EEOC claims of race discrimination based upon this implementation of integration through the transfers policy, receiving right to sue letters on or about November 2, 2004.  (Second Amended Complaint at 45-46). The present lawsuit, filed on December 14, 2004, soon followed.

**The Complaint**[4]

Asserting that 24 firefighters were involuntarily transferred out of their present companies, and five were denied requests to transfer, due to the new diversity policy, and seeking to avoid similar transfers in late 2004 and early 2005, plaintiffs have brought the present lawsuit alleging violation of the right of equal protection under the Constitution of the United States, violation of civil rights through state action per 28 U.S.C. § 1983, and race discrimination within the purview of Title VII (42 U.S.C. § 2000e et seq.) and the New Jersey Civil Rights Act (N.J.S.A. 10:6-1 et seq.)

### PROCEDURAL HISTORY IN THIS COURT

On December 15, 2005 this Court granted a Temporary Restraining Order ("TRO") against any further involuntary transfers within the Newark Fire Department ("NFD")and set the matter down for a hearing for a preliminary injunction on January

---

[4]     References here are to the Second Amended Complaint filed on March 4, 2005, adding a fire officer and the Newark Fire Officers Union as plaintiffs.  The original plaintiffs had been firefighters and their Union.

6, 2005.  The TRO was filed on December 23, 2004.  A preliminary

injunction was denied, without prejudice, as embodied in the

Court's Order of January 7, 2005.  An Amended and then a Second

Amended Complaint were filed, and the matter proceeded to a bench

trial during which the Court took testimony on March 15, 17, 18

and 21 and on May 2, 2005.  Also, on April 21, 2005, plaintiffs'

additional application for a preliminary injunction was denied.

On May 25, 2005, each side submitted proposed findings of fact

and conclusions of law, and on June 10, 2005 plaintiffs submitted

a response to defendants' submission.

**The Law**

The Court is tempted to view this matter in its simplest

terms:  reasonable action by a municipality, operating under a

consent decree, to desegregate its fire companies, much as it

would its schools, because "separate but equal" is not a viable

rationale to justify segregation in either setting.  It is

equally tempting to conclude that because assignments and

reassignments to tours are the City's management prerogative (in

which the plaintiff Unions have no role and which the affected

firefighters and officers may not grieve under their CBAs), the

present transfer plan to desegregate Newark's firehouses is a

legitimate, unassailable exercise of that prerogative.  See

Newark Firefighters Union, Inc. v. City of Newark, ___ N.J.

Super. ___ (App. Div. June 23, 2005), which this Court finds

-10-

persuasive and endorses.

However, the United States Supreme Court has, in the last 10 years, addressed in depth the manner in which a court should scrutinize affirmative action programs to promote diversity in a setting such as that presented here.  The City's transfer program should also be measured against those standards.

In Adarand Constructors, Inc. v. Pena, 515 U.S. 200 (1995), the Court, resolving conflicting approaches in its own prior decisions, determined that all racial classifications employed by a governmental actor must be analyzed by a reviewing court under strict scrutiny, to ensure that rights of equal protection under the law (a fourteenth amendment guarantee) have not been infringed.  That strict scrutiny requires a determination that the action taken serves a compelling governmental interest and is narrowly tailored to further that interest.  Although Adarand's factual setting is different from that of the case at bar, the recent decisions involving admissions policies at the University of Michigan are much closer, and the Court will address them at this time.

In Gratz v. Bollinger, 539 U.S. 244 (2003), the Court acknowledged that diversity in the student body of an educational institution can constitute a compelling state interest, but concluded that the automatic allowance of a 20-point bonus (one-fifth of the total points needed to guarantee admission) to each

-11-

"underrepresented minority" candidate solely because of ethnicity
was not narrowly tailored to ensure diversity.  Thus, this policy
for undergraduate admissions at the University of Michigan was
struck down.

    In Grutter v. Bollinger, 539 U.S. 306 (2003), decided on the
same day as Gratz, the Court upheld against a similar attack the
admissions policy of the University of Michigan Law School.  The
Court, speaking through Justice O'Connor (also the author of
Adarand) stated, "today we endorse Justice Powell's view that
student body diversity is a compelling state interest that can
justify the use of race in university admissions."  (Id. at 325).
Turning to the record before it, the Supreme Court stated the
following in concluding that the Law School had a compelling
interest in the generation of a diverse student body.

> Our conclusion that the Law School has a
> compelling interest in a diverse student body
> is informed by our view that attaining a
> diverse student body is at the heart of the
> Law School's proper institutional mission,
> and that "good faith" on the part of a
> university is "presumed" absent "a showing to
> the contrary."  438 U.S., at 318-319, 57 L.
> Ed. 2d 750, 98 S. Ct. 2733.
>
> As part of its goal of "assembling a
> class that is both exceptionally academically
> qualified and broadly diverse," the Law
> School seeks to "enroll a 'critical mass' of
> minority students."  Brief for Respondents
> Bollinger, et al. 13.  The Law School's
> interest is not simply "to assure within its
> student body some specified percentage of a
> particular group merely because of its race
> or ethnic origin."  Bakke, 438 U.S. at 307,

-12-

> 57 L. Ed. 2d 750, 98 S. Ct. 2733 (opinion of
> Powell, J.).  That would amount to outright
> racial balancing, which is patently
> unconstitutional.  *Ibid.; Freeman v. Pitts,*
> 503 U.S. 467, 494, 118 L. Ed. 2d 108, 112 S.
> Ct. 1430 (1992) ("Racial balance is not to be
> achieved for its own sake"); *Richmond v. J.
> A. Croson Co.,* 488 U.S., at 507, 102 L. Ed.
> 2d 854, 109 S. Ct. 706.  Rather, the Law
> School's concept of critical mass is defined
> by reference to the educational benefits that
> diversity is designed to produce.
>
> These benefits are substantial.  As the
> District Court emphasized, the Law School's
> admissions policy promotes "cross-racial
> understanding," helps to break down racial
> stereotypes, and "enables [students] to
> better understand persons of different
> races."  App. to Pet. for Cert. 246a.  These
> benefits are "important and laudable,"
> because "classroom discussion is livelier,
> more spirited, and simply more enlightening
> and interesting" when the students have "the
> greatest possible variety of backgrounds."
> *Id.,* at 246a, 244a.

(Id. at 333).

The Court then proceeded to determine whether the Law

School's admission program (very different than that for

undergraduate admissions) was narrowly tailored to achieve a

diverse student body.  In the Court's words:

> We acknowledge that "there are serious
> problems of justice connected with the idea
> of preference itself."  *Bakke,* 438 U.S., at
> 298, 57 L. Ed. 2d 750, 98 S. Ct. 2733
> (opinion of Powell, J.).  Narrow tailoring,
> therefore, requires that a race-conscious
> admissions program not unduly harm members of
> any racial group.  Even remedial race-based
> governmental action generally "remains
> subject to continuing oversight to assure
> that it will work the least harm possible to

-13-

other innocent persons competing for the
benefit." *Id.*, at 308, 57 L. Ed. 2d 750, 98
S. Ct. at 2733.  To be narrowly tailored, a
race-conscious admissions program must not
"unduly burden individuals who are not
members of the favored racial and ethnic
groups." *Metro Broadcasting, Inc. v. FCC*,
497 U.S. 547, 630, 111 L. Ed. 2d 445, 110 S.
Ct. 2997 (1990) (O'Connor, J., dissenting).

(Id. at 341).  The Court then concluded that the Law School's
admissions program was narrowly tailored, and upheld it.

**Newark's Policy**

Let us now apply strict scrutiny to Newark's policy to
desegregate its firehouses, determining first whether this City
had a compelling interest in doing so and, if so, whether the
action taken was narrowly tailored to achieve that goal.

Compelling Interest

Prior to the implementation of the present diversity policy,
de facto segregation existed in a significant number of tours in
Newark's firehouses.  Thus, the "assignment" of personnel through
the random system previously in place had the "effect of
unlawfully discriminating against [a] black or Hispanic employee"
(to wit, a firefighter of that ethnicity) assigned to an all-
black or all-Hispanic tour.  (Consent Decree at ¶ 1).  Since
separate but equal circumstances such as these have been declared
per se discriminatory for more than 50 years, Newark had a
compelling interest to institute an assignment policy that would
desegregate its tours.  With the adoption of the policy of

-14-

involuntary transfers to eliminate segregated tours of duty in
the Fire Department, the City of Newark initiated "remedial
actions and practices ... permitted to effectuate and carry out
the purpose of this Order...."  (Id.)  Indeed, any such remedial
actions under the Consent Decree were specifically declared not
to be discriminatory within the purview of Title VII.  (Id)  In
brief, Newark instituted the transfer policy to implement the
Consent Decree by desegregating its firehouses, a compelling
interest if ever there was one, and it succeeded.

      Plaintiffs argue that a fire department is not a law school
and that the benefits of diversity to such an educational
environment do not apply to a firehouse whose mission is to fight
fires and deal with other community emergencies, not to educate
tomorrow's leaders.  From that premise, plaintiffs further argue
that Newark's transfer policy is "outright racial balancing ...
for its own sake", action condemned by the Supreme Court.
Grutter v. Bollinger, 539 U.S. 306, 333 (2003).  While these
arguments deserve consideration, they do not prevail in the case
at bar.

      There is credible evidence in the record that exposure to
other firefighters of different backgrounds, vocabularies and
cultures better prepares a firefighter to work effectively with
his colleagues and to perform better on tests for promotional
opportunities.  Mentoring from senior firefighters on a tour

-15-

(usually white) helps junior (often minority) firefighters better learn and perform their tasks.  Much of a firefighter's time is spent at the firehouse in a setting of formal and informal training which is enhanced by a diverse, multi-generational environment.  Racial stereotypes can be broken down in this setting as well as in a classroom.  The Court finds the testimony of Captain Fatcen Ziyad particularly persuasive regarding the educational and sociological benefits of service in an integrated fire company.  As stated in the defendants' post-trial submission, which the Court finds supported in the record and, therefore, adopts:  "Captain Ziyad and Former Director Ed Dunham testified how integration in fire companies leads to greater camaraderie between coworkers, acceptance and consideration for people of varying backgrounds, sharing of information and study support.  It also promotes tolerance and mutual respect among colleagues.  What the NFU and the NFOU fail to even acknowledge in their quest to maintain firefighter based assignments choices, which led to the creation of single-race fire companies, is that firefighters are often welded together with a deep friendship and respect born in training together, in being housed together, in combating fires together, and subsequently matured by the realization that such diverse racial, gender and cultural association is not the impossibility within the fire department that many have been led to believe."  (Defendants' Findings of

-16-

Fact and Conclusions of Law at 36).

Accordingly, while education is not the primary function of a fire company, formal and informal training, on the job and during a tour at the firehouse, is an important aspect of a firefighter's occupation. Development of mutual respect and understanding between members of different races in the Newark Fire Department, which can only improve their performance in their often dangerous work, is necessarily enhanced by serving side-by-side with colleagues in a multi-racial tour.

When one "strictly scrutinizes" the Newark transfer policy and finds it to be designed to eliminate de facto segregation in its firehouses, in pursuit of the mandate of the Consent Decree to which it was a party, with attendant educational, sociological and job-performance enhancements as well, one is led to the inevitable conclusion that this policy was implemented to achieve a "compelling interest" of the City. Under no circumstances can it be said that the policy in question is merely "outright racial balancing ... for its own wake." Grutter, 539 U.S. at 333.

**Narrow Tailoring**

The Court now turns its attention to the question of whether the policy implemented by the City of Newark was "narrowly tailored" to achieve the goal. Indeed it was.

Initially, the Court notes that Union participation was certainly not required as any part of a narrowly tailored

-17-

approach.  The Unions' participation in prior transfer decisions
as a claim of right had contributed significantly to the single-
race firehouses with which Newark was confronted in 2002.  The
letter from Captain John B. Sandeller of the Newark Fire Officers
Union to Chief Jones, dated December 30, 2002, demonstrates that
it would be business as usual as far as the Union was concerned.
(Exh. P-19).

The Newark Fire Department then proceeded in a measured,
appropriate sequence to establish a policy to achieve its goal of
desegregation.  Chief Jones produced for Director Dunham a list
(P-4) essentially based upon voluntary transfer requests (some
granted and some denied) and the assignment of new arrivals in
the Department.  Chief Jones said that through this list he
"tried to achieve an element of diversity..."  (Id.)  However, he
was unsuccessful in achieving diversity throughout all tours.
Battalion Chief Wallace next addressed this task, generating the
transfer list with the explanation of its methodology appearing
in P-5.  Wallace's approach could serve as a textbook for narrow
tailoring in this field:

>    (1.) The Court infers that Wallace picked up
>    where Jones left off, that is, employing
>    assignments to new firefighters, and
>    honoring voluntary transfer requests
>    where diversity goals could be served.
>
>    (2.) Both white and non-white firefighters
>    would be involuntarily transferred.
>
>    (3.) "the firefighter with the least

-18-

        seniority would be transferred." (<u>Id</u>.)

(4.) "Some of these transfers would be made within the same firehouse, changing tours." (<u>Id</u>.)

(5.) "Others would be transferred within the Battalion when possible." (<u>Id</u>.)

(6.) "... every effort was made to minimize the impact on the affected firefighter." (<u>Id</u>.)

(7.) No firefighter, whatever his race, was fired, laid off or furloughed.

(8.) No firefighter suffered any reduction in rank, seniority or compensation.

(9.) No successful recruit was denied admission to the Fire Department.

(10.) Use of the transfer policy violated no employee's rights under any CBA because it was the exercise of a management prerogative.

Under strict scrutiny, the Court determines that the City of Newark had a compelling interest to desegregate its fire companies and did so pursuant to a policy of assignments and transfers that was narrowly tailored to achieve that goal. Plaintiffs have, therefore, failed to sustain any of their claims in the Second Amended Complaint.

**Coda**

While the Court has undertaken the foregoing factual and legal analysis which the law requires, determining that under such principles as "strict scrutiny", "compelling interest" and "narrow tailoring" Newark's plan to integrate its fire companies survives

-19-

plaintiffs' attack, it has also not lost sight of its primary
mission in all cases: to ensure that justice is done. The racial
tensions that have gripped the City of Newark for decades, even
erupting into the riots of 1967, are all too well known in this
region. The Consent Decree was a valiant effort to combat racial
preferences in the Newark Fire Department but, as noted above,
progress under that Decree was painfully slow. To suggest that
the Decree and the racism which it sought to combat is satisfied
merely by a gross headcount of minority firefighters and officers
while segregated firehouses persist is to endorse, in essence, the
separate but equal philosophy so emphatically rejected by our
Supreme Court more than 50 years ago in Brown v. Board of
Education, 347 U.S. 483 (1954).

The City of Newark, urged by its mayor and working through
the senior members of the Fire Department, undertook the laudable
goal of integrating all the City's fire companies through a policy
of augmenting transfer requests and assignments of new personnel
with a minimum of necessary involuntary transfers. This was not
an easy task, particularly considering that three significant
ethnic groups (Caucasian, African-American and Hispanic) are
involved in the assignment process. But the task has been
accomplished, and it was right and just to do so.

Let us contrast the actions, the motives and the courage of
the City of Newark with the conduct of the plaintiff Unions in

-20-

this case:  The Newark Firefighters Union and the Newark Fire
Officers Union.  Those unions and their leadership could have
endorsed the city's plan and surely played a role in its
implementation.  The benefits to all Union members from integrated
firehouses have been adequately argued and established on this
record and, indeed, were obvious.  Equally obvious is the
potential for integrated fire companies, particularly when their
members arrive at a neighborhood fire, to demonstrate to the
citizens of the City of Newark that cooperation by persons of
different races, striving side-by-side to achieve a common goal,
works.  But the Unions would have none of this.  Blinded by a
perceived incursion into their rights as their members' collective
bargaining representatives, the Unions would sacrifice the
laudable goal of a truly integrated fire department at the altar
of a jurisdictional dispute over their "rights" to approve
permanent transfers as bargainable terms and conditions of
employment.  On this point the Unions have recently been proven
wrong by the Appellate Division in <u>Newark Firefighters Union, Inc.</u>
<u>v. City of Newark</u>, ___ N.J. Super. ___ (App. Div. June 23, 2005).
Yet, as plaintiffs in the case at bar, the Unions have pursued
this goal under the guise of the United States Constitution and
various anti-discrimination statutes.  However, the perpetuation
of segregated firehouses, with voluntary transfers into
comfortable environments, encouraged by Union input particularly

-21-

on questions of seniority (the old <u>status</u> <u>quo</u> which the Unions

fight here to preserve), is the very antithesis of the civil

rights laws which the Unions invoke.  As noted in the preceding

portions of this Opinion, they have not succeeded.

### CONCLUSION

For the reasons set forth above, the Court dismisses all

claims set forth in the Second Amended Complaint and enters

judgment for the defendants, with costs.

JOHN W. BISSELL
Chief Judge
United States District Court

DATED:  August 24, 2005

-22-

# NEWARK FIRE DEPARTMENT

Office of the Fire Chief
1010 Eighteenth Avenue
Newark, New Jersey 07106

733-5187                                                                            733-7423

## *M E M O R A N D U M*

DATE:       January 9, 2003

FROM:       LOWELL F. JONES, FIRE CHIEF

TO:          EDWARD J. DUNHAM, FIRE DIRECTOR

RE:          DEPARTMENTAL TRANSFER LIST

Director,

Attached is the departmental transfer list as developed by the Office of the Fire Chief. I tried to achieve an element of diversity as well as assign department personnel as per their specialized training. Truck Company's, DeCon units, units that operated alone due to rotational closings, and units on the extreme of the City were assigned manpower levels higher than units that generally responded closely with other units. This was done because of our need to maintain a high degree of readiness in face of world and/or domestic terroristic threats. Units that have been training together and that have achieved a high level of efficiency was maintained and where we could comply with diversity we did so.

I believe we have met the mandates as outlined by the Mayor.

LOWELL F. JONES
FIRE CHIEF

LFJ:yjb



PLAINTIFF'S EXHIBIT 4   PENGAD·Bayonne, N. J.

MEMO/DIR/Departmental Transfer List-2003

## FIREFIGHTERS LIST

| | FROM: | TO: |
|---|---|---|
| F/F Rufus Jackson | Engine 7, Tour 4 | Arson |
| F/F Eric Barnes | Planning & Research | Comm. Relations |
| F/F Manuel Gonzalez | Engine 16, Tour 4 | Engine 05, Shift 2 |
| F/F Salvador Bidot | Engine 11, Tour 2 | Engine 06, Shift 3 |
| F/F John Perdisatt | Engine 11, Tour 1 | Engine 06, Shift 3 |
| F/F Angelo Capalbo | Engine 21, Tour 2 | Engine 07, Shift 2 |
| F/F Thomas Hodge | Roving, Tour 4 | Engine 07, Shift 2 |
| F/F William Boyd | Roving, Tour 3 | Engine 07, Shift 3 |
| F/F Daniel Iberer | Roving, Tour 4 | Engine 07, Shift 4 |
| F/F Robert Illis | Roving, Tour 4 | Engine 07, Shift 4 |
| F/F Tyrone Mitchell | Engine 21, Tour 4 | Engine 07, Shift 4 |
| F/F Thomas Buffaloe | Roving, Tour 4 | Engine 09, Shift 1 |
| F/F Jason Jones | Roving, Tour 2 | Engine 09, Shift 1 |
| F/F John Meixedo | Roving, Tour 4 | Engine 09, Shift 4 |
| F/F Joseph Gethard | Roving, Tour 1 | Engine 10, Shift 2 |
| F/F Robert Defroscia | Roving, Tour 1 | Engine 10, Shift 4 |
| F/F Delfin Ortiz | Roving, Tour 2 | Engine 11, Shift 2 |
| F/F Reynard Gasvage | Roving, Tour 1 | Engine 11, Shift 4 |
| F/F Radney Johnson | Truck 11, Tour 1 | Engine 11, Shift 1 |
| F/F David Rodgers | Roving, Tour 3 | Engine 12, Shift 3 |
| F/F William Snyder | Truck 9, Tour 1 | Engine 14, Shift 3 |
| F/F Lazaro Rodriguez | Roving, Tour 3 | Engine 15, Shift 3 |
| F/F Mark Wolf | Roving, Tour 4 | Engine 15, Shift 4 |
| F/F Thomas Jenkins | Roving, Tour 1 | Engine 18, Shift 1 |
| F/F Joseph Kostnicka | Roving, Tour 2 | Engine 16, Shift 2 |
| F/F William Mojica | Training Academy | Engine 16, Shift 3 |
| F/F Rashad Shahied | Engine 19, Tour 3 | Engine 16, Shift 3 |
| F/F Elio Valentin | Roving, Tour 4 | Engine 16, Shift 4 |
| F/F Jean Pierre | Roving, Tour 2 | Engine 17, Shift 2 |
| F/F Thomas Shea | Roving, Tour 3 | Engine 17, Shift 2 |
| F/F Gregory Meehan | Roving, Tour 3 | Engine 17, Shift 3 |
| F/F Gary Holmes | Engine 11, Tour 4 | Engine 18, Shift 2 |
| F/F Latina Byrd | Roving, Tour 1 | Engine 18, Shift 4 |
| F/F Manuel Vieira | Roving, Tour 4 | Engine 18, Shift 4 |
| F/F Dean Scalani | Roving, Tour 3 | Engine 19, Shift 3 |
| F/F Jose Robles | Roving, Tour 3 | Engine 21, Shift 2 |
| F/F Eugene Brenner | Engine 21, Tour 2 | Engine 26, Shift 2 |
| F/F Carl Schnerig | Engine 7, Tour 2 | Engine 26, Shift 2 |
| F/F David Holmes | Roving, Tour 4 | Engine 29, Shift 4 |
| F/F John Rispoli | Engine 17, Tour 2 | Engine 29, Shift 4 |
| F/F Willie Booker | FP&LS | Haz-Mat Inspector |
| F/F Michael Reed | Engine 17, Tour 2 | Rescue, Shift 2 |
| F/F Dean Gatti | Truck 1, Tour 3 | Rescue, Shift 3 |
| F/F Gilbert Colon Jr. | Truck 6, Tour 3 | Rescue, Shift 4 |
| F/F Anthony Mauriello | Motors | Special Service |

MEMO/DIR/Departmental Transfer List-2003

## FIREFIGHTERS LIST

| | FROM: | TO: |
|---|---|---|
| F/F Bernard J Dowd | Truck 4, Tour 1 | Training/Fireboat |
| F/F Alejandro Cruz | Engine 10, Tour 4 | Truck 01, Shift 1 |
| F/F Hector Lugo | Engine 16, Tour 4 | Truck 01, Shift 1 |
| F/F Sean Williams | Truck 1, Tour 3 | Truck 01, Shift 1 |
| F/F Michael Cravo | Roving, Tour 1 | Truck 01, Shift 3 |
| F/F Angel Rosario | Roving, Tour 3 | Truck 01, Shift 3 |
| F/F Luis Sanabria | Roving, Tour 4 | Truck 01, Shift 4 |
| F/F William Castro | Roving, Tour 4 | Truck 04, Shift 1 |
| F/F Walter M. Fudali | Truck 4, Tour 2 | Truck 04, Shift 1 |
| F/F Michael Gilbert | Truck 4, Tour 4 | Truck 04, Shift 2 |
| F/F Ernest Lunetta | Roving, Tour 2 | Truck 04, Shift 2 |
| F/F Oswald Robetto | Roving, Tour 2 | Truck 04, Shift 2 |
| F/F Darius Bishop | Engine 27, Tour 4 | Truck 04, Shift 4 |
| F/F James Kupko | Roving, Tour 4 | Truck 04, Shift 4 |
| F/F Lonzia Ellison | Roving, Tour 1 | Truck 05, Shift 1 |
| F/F Clarence Sims | Roving, Tour 3 | Truck 05, Shift 3 |
| F/F John Wilson | Truck 5, Tour 1 | Truck 05, Shift 3 |
| F/F Douglas Jones | Roving, Tour 2 | Truck 06, Shift 2 |
| F/F Anthony Campos | Engine 26, Tour 2 | Truck 07, Shift 2 |
| F/F Jose Alves | Roving, Tour 1 | Truck 08, Shift 1 |
| F/F Wilfredo Rivera | Roving, Tour 3 | Truck 08, Shift 3 |
| F/F Cornell Roper | Roving, Tour 3 | Truck 08, Shift 3 |
| F/F Julio Gonzalez | Roving, Tour 1 | Truck 08, Shift 4 |
| F/F Kamal Brown | Roving, Tour 1 | Truck 09, Shift 1 |
| F/F Jose Garcia | Roving, Tour 1 | Truck 09, Shift 1 |
| F/F Anthony Magliacano | Roving, Tour 2 | Truck 09, Shift 2 |
| F/F Jose Cantara | Engine 18, Tour 1 | Truck 09, Shift 3 |
| F/F Albert Downey | Truck 8, Tour 3 | Truck 09, Shift 3 |
| F/F Reinaldo Martinez | Roving, Tour 2 | Truck 10, Shift 2 |
| F/F Shannon McTige | Roving, Tour 2 | Truck 10, Shift 2 |
| F/F Jerry DeLane | Truck 9, Tour 1 | Truck 11, Shift 1 |
| F/F Peter Maloney III | Truck 12, Tour 1 | Truck 11, Shift 1 |
| F/F David Mickel | Roving, Tour 3 | Truck 11, Shift 3 |
| F/F Krzysztof Saroka | Roving, Tour 4 | Truck 11, Shift 4 |
| F/F Claudino Dominguez | Roving, Tour 1 | Truck 12, Shift 1 |
| F/F Marshall Richardson | Roving, Tour 2 | Truck 12, Shift 2 |

# CAPTAIN'S LIST

| | FROM: | TO: |
|---|---|---|
| Captain Abnathya Mason | Engine Co. 10, Shift 1 | Roving, Shift 1 |
| Captain Paul Bartelloni | Engine Co. 29, Shift 1 | Engine Co. 10, Shift 1 |
| Captain M. Foy | Roving, Shift 1 | Engine Co. 29, Shift 1 |
| Captain Michael McCarthy | Engine Co. 17, Shift 1 | Truck Co. 12, Shift 2 |
| Captain Michael Sorace | Truck Co. 10, Shift 1 | Engine Co. 17, Shift 1 |
| Captain Daniel Synder | Roving, Shift 4 | Truck Co. 10, Shift 1 |
| Captain Thomas Grehl | Engine Co. 27, Shift 3 | Special Services |
| Captain Mark Hopkins | Roving, Shift 2 | Engine Co. 28, Shift 2 |
| Captain Herbert Volkert | Truck Co. 11, Shift 1(t) | Truck Co. 11, Shift 1 |
| Captain Gregory Sereico | Rescue Co. 1, Shift 1(t) | Rescue Co. 1, Shift 1 |
| Captain John Sicignano | Roving, Shift 1 | Roving, Shift 2 |
| Captain Robert Banta | Engine 19, Shift 1 | Engine 27, Shift 3 |
| Captain Robert Robbins | Roving, Shift 2 | Engine 19, Shift 1 |
| Captain Louis Miele | Roving, Shift 2 | Roving, Shift 1 |

## Newark Fire Department

### Edward Dunham, Director
### Lowell F. Jones, Fire Chief

Division of Planning and Research

PLAINTIFF'S
EXHIBIT
5

ATTORNEY-CLIENT
PRIVILEGED MATERIAL

To:        Edward J. Dunham, Fire Director

From:      Battalion Chief Raymond L. Wallace

Re:        100% DIVERSITY TRANSFER LIST

Date:      January 13, 2003

Director,

After reviewing the transfer list submitted by Fire Chief Jones as requested by you, I note the directive as to have diversity throughout the Newark Fire Department has not been achieved. If Chief Jones transfer list were to be used, there would be 14 companies all Caucasian and 10 companies African American. (see Jones list) This list does not meet the directive and is unsatisfactory.

I propose a solution that would meet the mandate of diversity for all fire crews within the Department. ( see 100% diversity) This would require transfers of department members to meet the objective. The transfers would be consistent across the Department, as the firefighter with the least seniority would be transferred. Some of these transfers would be made within the same firehouse, changing tours. Others would be transferred within the Battalion when possible. Be assured that every effort was made to minimize the impact on the affected firefighter.

To implement this plan would require that additional transfers be made. I am providing a list, which was generated by the above mentioned manner (see Additional Transfers).

The Planning and Research Division recommends and supports this plan as it meets the desired effect intended with the least impact for the firefighters involved.

Respectfully,

B/C Raymond L. Wallace

Attachments
Confidential

01/06/2005 12:35 FAX                                                    004/008

01/06/2005 18:29    9737335394              LAW DEPT NEWARK              PAGE  04/28

## Fire Chief Jones Transfer List

| RANK | NAME | FROM COMPANY | TOUR | TO COMPANY | TOUR |
|------|------|------|------|------|------|
| F/F | Rufus Jackson | Engine 7 | 4 | Arson | |
| F/F | Manuel Gonzalez | Engine 16 | 4 | Engine 5 | 2 |
| F/F | Salvador Bidot | Engine 11 | 2 | Engine 6 | 3 |
| F/F | John Perdisatt | Engine 11 | 1 | Engine 6 | 3 |
| F/F | Angelo Capalbo | Engine 21 | 2 | Engine 7 | 2 |
| F/F | Thomas Hodge | Roving | 4 | Engine 7 | 2 |
| F/F | William Boyd | Roving | 3 | Engine 7 | 3 |
| F/F | Daniel Iberer | Roving | 4 | Engine 11 | 4 |
| F/F | Robert Illis | Roving | 4 | Engine 7 | 4 |
| F/F | Tyrone Mitchell | Engine 21 | 4 | Engine 7 | 4 |
| F/F | Thomas Buffaloe | Roving | 4 | Engine 9 | 1 |
| F/F | Jason Jones | Roving | 2 | Engine 9 | 1 |
| F/F | John Meixedo | Roving | 4 | Engine 9 | 4 |
| F/F | Joseph Gethard | Roving | 1 | Engine 18 | 1 |
| F/F | Robert Defroscia | Roving | 1 | Engine 10 | 4 |
| F/F | Delfin Ortiz | Roving | 2 | Engine 11 | 2 |
| F/F | Reynard Gasvage | Roving | 1 | Engine 7 | 4 |
| F/F | Radney Johnson | Truck 11 | 1 | Engine 11 | 1 |
| F/F | David Rodgers | Roving | 3 | Engine 12 | 3 |
| F/F | William Snyder | Truck 9 | 1 | Engine 14 | 3 |
| F/F | Lazaro Rodriguez | Roving | 3 | Engine 15 | 3 |
| F/F | Mark Wolf | Roving | 4 | Engine 15 | 4 |
| F/F | Thomas Jenkins | Roving | 1 | Engine 16 | 1 |
| F/F | Joseph Kostnicka | Roving | 2 | Engine 16 | 2 |
| F/F | William Mojica | Training Academy | | Engine 16 | 3 |
| F/F | Rashad Shahied | Engine 19 | 3 | Engine 16 | 3 |
| F/F | Elio Valentin | Roving | 4 | Engine 16 | 4 |
| F/F | Jean Pierre | Roving | 2 | Engine 17 | 2 |
| F/F | Thomas Shea | Roving | 3 | Engine 17 | 2 |
| F/F | Gregory Meehan | Roving | 3 | Truck 8 | 3 |
| F/F | Gary Holmes | Engine 11 | 4 | Engine 18 | 2 |
| F/F | Latina Byrd | Roving | 1 | Engine 18 | 4 |
| F/F | Manuel Vieira | Roving | 4 | Engine 18 | 4 |
| F/F | Dean Scalani | Roving | 3 | Engine 19 | 3 |
| F/F | Jose Robles | Roving | 3 | Engine 21 | 2 |
| F/F | Eugene Brenner | Engine 21 | 2 | Enline 26 | 2 |
| F/F | Carl Schnerig | Engine 7 | 2 | Engine 26 | 2 |
| F/F | David Holmes | Roving | 4 | Engine 29 | 4 |
| F/F | John Rispoli | Engine 17 | 2 | Engine 29 | 4 |
| F/F | Michael Reed | Engine 17 | 2 | Rescue | 2 |
| F/F | Dean Gatti | Truck 1 | 3 | Rescue | 3 |
| F/F | Gilbert Colon, Jr. | Truck 6 | 3 | Rescue | 4 |
| F/F | Bernard J. Dowd | Truck 4 | 1 | Training/Fireboat | |
| F/F | Alejandro Cruz | Engine 10 | 4 | Truck 1 | 1 |
| F/F | Hector Lugo | Engine 16 | 4 | Truck 1 | 1 |
| F/F | Sean Williams | Truck 1 | 3 | Truck 1 | 1 |
| F/F | Michael Cravo | Roving | 1 | Truck 1 | 3 |
| F/F | Angel Rosario | Roving | 3 | Truck 1 | 3 |
| F/F | Luis Sanabria | Roving | 4 | Truck 1 | 4 |

Newark Fire Department
Directors Office
Confidential

Jones List                                                              1/13/2003

01/06/2005 12:35 FAX                                                ☑ 005/008

01/06/2005  10:29   9737335394              LAW DEPT NEWARK              PAGE  05/08

## Fire Chief Jones Transfer List

| RANK | NAME | FROM COMPANY | TOUR | | TO COMPANY | TOUR |
|------|------|------|------|---|------|------|
| F/F | William Castro | Roving | 4 | | Truck 4 | 1 |
| F/F | Walter M. Fudali | Truck 4 | 2 | | Truck 4 | 1 |
| F/F | Michel Gilbert | Truck 4 | 4 | | Truck 4 | 2 |
| F/F | Ernest Lunetta | Roving | 2 | | Truck 4 | 2 |
| F/F | Oswald Robeto | Roving | 2 | | Truck 4 | 2 |
| F/F | Darius Bishop | Engine 27 | 4 | | Truck 4 | 4 |
| F/F | James Kupko | Roving | 4 | | Truck 4 | 4 |
| F/F | Lonzia Ellison | Roving | 1 | | Truck 11 | 1 |
| F/F | Clarence Sims | Roving | 3 | | Truck 5 | 3 |
| F/F | John Wilson | Truck 5 | 1 | | Truck 5 | 3 |
| F/F | Douglas Jones | Roving | 2 | | Truck 6 | 2 |
| F/F | Anthony Campos | Engine 26 | 2 | | Truck 7 | 2 |
| F/F | Jose Alves | Roving | 1 | | Truck 8 | 1 |
| F/F | Wilfredo Ribera | Roving | 3 | | Engine 17 | 3 |
| F/F | Cornell Roper | Roving | 3 | | Truck 8 | 3 |
| F/F | Julio Gonzalez | Roving | 1 | | Truck 8 | 4 |
| F/F | Kamal Brown | Roving | 1 | | Truck 8 | 1 |
| F/F | Jose Garcia | Roving | 1 | | Truck 9 | 1 |
| F/F | Anthony Magliacano | Roving | 2 | | Engine 29 | 2 |
| F/F | Jose Cantara | Engine 18 | 1 | | Truck 9 | 3 |
| F/F | Albert Downey | Truck 8 | 3 | | Truck 9 | 3 |
| F/F | Reinaldo Martinez | Roving | 2 | | Truck 10 | 2 |
| F/F | Shannon McTige | Roving | 2 | | Truck 10 | 2 |
| F/F | Jerry DeLane | Truck 9 | 1 | | Truck 11 | 1 |
| F/F | David Mickel | Roving | 3 | | Rescue | 3 |
| F/F | Krzysztof Saroka | Roving | 4 | | Truck 12 | 4 |
| F/F | Claudino Dominguez | Roving | 1 | | Engine 7 | 1 |
| F/F | Marshall Richardson | Roving | 2 | | Truck 12 | 2 |

Newark Fire Department
Directors Office
Confidential

Jones List                                                          1/13/2003

01/06/2005 12:35 FAX                                                    ☑ 008/008
01/06/2005  18:29     9737335394          LAW DEPT NEWARK          PAGE   06/08

# FIRE CHIEF JONES LIST

| ENGINE | Tour 1 | | | Tour 2 | | | Tour 3 | | | Tour 4 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | B | H | C | B | H | C | B | H | C | B | H | C | |
| 5 | 2 | 2 | 0 | 1 | 2 | 1 | 0 | 1 | 3 | 1 | 0 | 3 | |
| 6 | 1 | 0 | 2 | 0 | 1 | 2 | 0 | 1 | 3 | | | | |
| 7 | | | | 1 | 1 | 2 | 1 | 0 | 3 | 2 | 1 | 1 | |
| 9 | 2 | 0 | 3 | | | | | | | 0 | 1 | 3 | |
| 10 | 3 | 0 | 1 | | | | | | | 0 | 2 | 2 | |
| 11 | | | | 0 | 1 | 2 | | | | 3 | 0 | 1 | |
| 12 | 1 | 0 | 3 | | | | 2 | 1 | 1 | | | | |
| 13 | 0 | 1 | 3 | 0 | 1 | 3 | 1 | 1 | 1 | | | | |
| 14 | 0 | 1 | 3 | 1 | 1 | 2 | 0 | 2 | 2 | | | | |
| 15 | 2 | 2 | 0 | | | | 1 | 1 | 2 | 3 | 0 | 1 | |
| 16 | 2 | 1 | 0 | 0 | 1 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | |
| 17 | 1 | 0 | 3 | 1 | 0 | 3 | 3 | 0 | 1 | | | | |
| 18 | | | | 1 | 0 | 3 | 0 | 1 | 3 | 3 | 0 | 1 | |
| 19 | | | | | | | 2 | 0 | 1 | | | | |
| 21 | | | | 0 | 1 | 2 | 2 | 0 | 1 | | | | |
| 26 | | | | 1 | 0 | 2 | 2 | 0 | 2 | 0 | 1 | 2 | |
| 27 | | | | | | | 0 | 1 | 3 | 1 | 0 | 1 | 1Asian |
| 28 | 2 | 0 | 2 | 1 | 0 | 3 | 2 | 1 | 1 | | | | |
| 29 | 3 | 0 | 1 | | | | | | | 1 | 0 | 3 | |
| **TRUCK** | | | | | | | | | | | | | |
| 1 | 1 | 3 | 0 | 2 | 2 | 0 | 0 | 1 | 3 | 3 | 1 | 0 | |
| 4 | 2 | 1 | 1 | 1 | 1 | 2 | | | | 2 | 1 | 1 | |
| 5 | | | | 1 | 0 | 3 | 1 | 0 | 3 | 1 | 0 | 3 | |
| 6 | 2 | 0 | 2 | 1 | 2 | 1 | 2 | 0 | 1 | 2 | 1 | 1 | |
| 7 | | | | 0 | 1 | 3 | 0 | 3 | 1 | 1 | 2 | 1 | |
| 8 | 0 | 1 | 2 | | | | 1 | 2 | 1 | 0 | 2 | 1 | |
| 9 | 1 | 1 | 2 | | | | 2 | 1 | 2 | | | | |
| 10 | | | | 2 | 1 | 1 | | | | 2 | 1 | 1 | |
| 11 | 1 | 0 | 3 | | | | 1 | 0 | 3 | 3 | 0 | 1 | |
| 12 | 1 | 1 | 3 | 1 | 1 | 2 | 1 | 0 | 3 | 2 | 0 | 2 | |
| **RESCUE** | 0 | 1 | 3 | 0 | 1 | 3 | 1 | 1 | 3 | 0 | 3 | 1 | |
| | 44 | 15 | 44 | 23 | 18 | 61 | 25 | 19 | 60 | 43 | 17 | 41 | 1 |
| TOTALS | | 103 | | | 102 | | | 104 | | | 102 | | |

Confidential
Newark Fire Department
Directors Office

Jones List #1                                                          1/14/2003

01/06/2005 12:36 FAX                                          ☑ 007/008

01/06/2005  10:29    9737395994           LAW DEPT NEWARK              PAGE  07/08

ADDITIONAL TRANSFERS
100 % DIVERSITY

| RANK | NAME | FROM COMPANY | TOUR | | TO COMPANY | TOUR |
|---|---|---|---|---|---|---|
| F/F | CLAUDINO DOMINQUEZ | ROVING | 1 | | ENGINE 7 | 1 |
| F/F | DAVID WALLACE | TRUCK 8 | 4 | | TRUCK 9 | 2 |
| F/F | ANTHONY MAGLIACANO | ROVING | 2 | | ENGINE 29 | 2 |
| F/F | JASON JONES | ROVING | 2 | | TRUCK 5 | 1 |
| F/F | MICHAEL CRAVO | ROVING | 1 | | ENGINE 19 | 2 |
| F/F | DAVID MICKEL | ROVING | 3 | | RESCUE | 3 |
| F/F | KENNETH REEDS | ENGINE 19 | 2 | | ENGINE 27 | 2 |
| F/F | JAMES GILES | ENGINE 29 | 2 | | ENGINE 10 | 2 |
| F/F | JOSEPH GETHARD | ROVING | 1 | | ENGINE 18 | 1 |
| F/F | DAYON COBBS | TRUCK 10 | 1 | | TRUCK 10 | 3 |
| F/F | CHRIS DEMURO | TRUCK 10 | 3 | | TRUCK 10 | 1 |
| F/F | WENDELL COOPER | ENGINE 29 | 2 | | ENGINE 9 | 2 |
| F/F | MARK PISERCHIO | ENGINE 9 | 2 | | ENGINE 29 | 2 |
| F/F | JAMES COSTA | TRUCK 11 | 2 | | ENGINE 19 | 2 |
| F/F | GARY HOLMAN | ENGINE 19 | 2 | | TRUCK 11 | 2 |
| F/F | PAUL MAZZA | ENGINE 7 | 1 | | ENGINE 26 | 1 |
| F/F | STEVE ANDERSON | ENGINE 26 | 1 | | ENGINE 6 | 1 |
| F/F | RAYMOND HATTON | ENGINE 6 | 1 | | ENGINE 11 | 1 |
| F/F | BRYAN WEBB | ENGINE 11 | 1 | | ENGINE 6 | 1 |
| F/F | DEBLIN RODRIGEZ | TRUCK 7 | 3 | | TRUCK 11 | 3 |
| F/F | HAROLD BANE | ENGINE 10 | 3 | | ENGINE 12 | 3 |
| F/F | GERALD HIGHSMITH | ENGINE 12 | 3 | | ENGINE 10 | 3 |
| F/F | PETER COONEY | ENGINE 9 | 3 | | ENGINE 15 | 3 |
| F/F | LAZARIO RODRIGUEZ | ROVING | 3 | | ENGINE 9 | 3 |
| F/F | ART CIAMPI | ENGINE 26 | 4 | | ENGINE 19 | 4 |
| F/F | KAREEM JACKSON | ENGINE 19 | 4 | | ENGINE 26 | 4 |
| F/F | CLARENCE BRUTON | ENGINE 17 | 4 | | ENGINE 21 | 4 |
| F/F | JAMES WILLIS | ENGINE 21 | 4 | | ENGINE 17 | 4 |
| F/F | KEVIN JOHNSON | ENGINE 12 | 4 | | ENGINE 10 | 4 |
| F/F | ROBERT DEFROSCIA | ROVING | 4 | | ENGINE 12 | 4 |
| F/F | CHARLES LOMACK | ENGINE 19 | 4 | | ENGINE 14 | 4 |
| F/F | MANUAL RODRIGUEZ | ENGINE 5 | 1 | | ENGINE 19 | 1 |
| F/F | ARTHUR GARRETT | TRAINING | | | SPECIAL SERVICE | |
| F/F | THADDEUS KENNEDY | COMM. REL. | | | TRAINING | |

01/06/2005 12:38 FAX ☑ 008/008

01/06/2005  10:29   9737335394   LAW DEPT NEWARK   PAGE  08/08

## 100 % DIVERSITY

| ENGINE | Tour 1 | | | Tour 2 | | | Tour 3 | | | Tour 4 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | B | H | C | B | H | C | B | H | C | B | H | C | |
| 5 | 2 | 2 | 0 | 1 | 2 | 1 | 0 | 1 | 3 | 1 | 0 | 3 | |
| 6 | 2 | 0 | 1 | 0 | 1 | 2 | 0 | 1 | 3 | | | | |
| 7 | 1 | 0 | 3 | 1 | 1 | 2 | 1 | 0 | 3 | 2 | 1 | 1 | |
| 9 | 1 | 0 | 3 | 1 | 0 | 3 | 0 | 1 | 3 | 0 | 1 | 3 | |
| 10 | 3 | 0 | 1 | 1 | 0 | 3 | 1 | 0 | 3 | 1 | 2 | 1 | |
| 11 | 2 | 0 | 1 | 0 | 1 | 2 | | | | 3 | 0 | 1 | |
| 12 | 1 | 0 | 3 | | | | 1 | 1 | 2 | 3 | 0 | 1 | |
| 13 | 0 | 1 | 3 | 0 | 1 | 2 | 1 | 1 | 1 | | | | |
| 14 | 0 | 1 | 3 | 1 | 1 | 2 | 0 | 2 | 2 | 1 | 0 | 3 | |
| 15 | 2 | 2 | 0 | | | | 1 | 0 | 3 | 3 | 0 | 1 | |
| 16 | 2 | 1 | 0 | 0 | 1 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | |
| 17 | 1 | 0 | 3 | 1 | 0 | 3 | 3 | 0 | 1 | 3 | 0 | 1 | |
| 18 | 3 | 0 | 1 | 1 | 0 | 3 | 0 | 1 | 3 | 3 | 0 | 1 | |
| 19 | 3 | 1 | 0 | 2 | 0 | 2 | 2 | 0 | 1 | 2 | 0 | 1 | |
| 21 | | | | 0 | 1 | 2 | 2 | 0 | 1 | 1 | 0 | 2 | |
| 26 | 3 | 0 | 1 | 1 | 0 | 2 | 2 | 0 | 2 | 0 | 1 | 2 | |
| 27 | | | | 1 | 0 | 3 | 0 | 1 | 3 | 1 | 0 | 1 | 1Asian |
| 28 | 2 | 0 | 2 | 1 | 0 | 3 | 2 | 1 | 1 | 1 | 0 | 3 | |
| 29 | 3 | 0 | 1 | 2 | 0 | 2 | | | | 1 | 0 | 3 | |
| **TRUCK** | | | | | | | | | | | | | |
| 1 | 1 | 3 | 0 | 2 | 2 | 0 | 0 | 1 | 3 | 3 | 1 | 0 | |
| 4 | 2 | 1 | 1 | 1 | 1 | 2 | | | | 2 | 1 | 1 | |
| 5 | 1 | 0 | 3 | 1 | 0 | 3 | 1 | 0 | 3 | 1 | 0 | 3 | |
| 6 | 2 | 0 | 2 | 1 | 2 | 1 | 2 | 0 | 1 | 2 | 1 | 1 | |
| 7 | | | | 0 | 1 | 3 | 0 | 2 | 1 | 1 | 2 | 1 | |
| 8 | 0 | 1 | 2 | | | | 1 | 2 | 1 | 0 | 2 | 1 | |
| 9 | 1 | 1 | 2 | 1 | 0 | 3 | 1 | 1 | 2 | | | | |
| 10 | 3 | 0 | 1 | 2 | 1 | 1 | 1 | 0 | 3 | 2 | 1 | 1 | |
| 11 | 1 | 0 | 3 | 1 | 0 | 3 | 0 | 1 | 3 | 3 | 0 | 1 | |
| 12 | 1 | 0 | 3 | 1 | 1 | 2 | 1 | 0 | 3 | 2 | 0 | 2 | |
| **RESCUE** | 0 | 1 | 3 | 0 | 1 | 3 | 1 | 1 | 2 | 0 | 3 | 1 | |
| | 43 | 15 | 46 | 24 | 18 | 60 | 25 | 19 | 58 | 43 | 17 | 41 | 1 |
| **TOTALS** | | 104 | | | 102 | | | 102 | | | 102 | | |

Confidential
Newark Fire Department
Directors Office

100 % Diversity   1/14/2003

CITY OF NEWARK, NEW JERSEY
SHARPE JAMES, MAYOR

FIRE DEPARTMENT
EDWARD J. DUNHAM, FIRE DIRECTOR
LOWELL F. JONES, FIRE CHIEF

NOTICE NO. 2003 - 005

PLAINTIFF'S
EXHIBIT
6

DATE:    JANUARY 15, 2003

TO:    THE OFFICERS AND MEMBERS OF
       THE NEWARK FIRE DEPARTMENT

RE:    **EXECUTIVE ORDER NO. 426 – TRANSFERS & ASSIGNMENTS**

The following is to be brought to the attention of all Members of the Newark Fire Department.

"FIRE DEPARTMENT

EXECUTIVE ORDER NO. 426                      JANUARY 15, 2003

FROM:    EDWARD J. DUNHAM, FIRE DIRECTOR

TO:    LOWELL F. JONES, FIRE CHIEF
       KENNETH BLAHA, CHIEF CLERK

The following transfers and assignments are hereby effective at 0800 hours on Friday, January 31, 2003:

| | FROM | | TO | |
|---|---|---|---|---|
| Capt. Michael Foy | Roving | Shift 1 | Roving | Tour 2 |
| Capt. Daniel Snyder | Roving | Shift 4 | Eng. Co. 29 | Tour 1 |
| Capt. Andrew Truskowski | Roving | Shift 1 | Eng. Co. 17 | Tour 1 |
| Capt. Michael McCarthy | Eng. Co. 17 | Shift 1 | Trk. Co. 12 | Tour 2 |
| Capt. Abnathy A. Mason | Eng. Co. 10 | Shift 1 | Roving | Tour 1 |
| Capt. Paul Bartelloni | Eng. Co. 29 | Shift 1 | Eng. Co. 10 | Tour 1 |
| Capt. Herbert Volkert | Trk. Co. 11 | Shift 1 (T) | Trk. Co. 11 | Tour 1 |
| Capt. Gregory Sereico | Rescue | Shift 1 (T) | Rescue | Tour 1 |
| Capt. Robert Robbins | Roving | Shift 2 | Community Relations | |
| Capt. Mark Hopkins | Roving | Shift 2 | Eng. Co. 28 | Tour 2 |
| | | | | |
| F/F  Rufus Jackson | Eng. Co.  7 | Tour 4 | Investigations | |
| F/F  Manual Gonzalez | Eng. Co. 16 | Tour 4 | Eng. Co.  5 | Tour 2 |
| F/F  Salvador Bidot | Eng. Co. 11 | Tour 2 | Eng. Co.  6 | Tour 3 |
| F/F  John Perdisatt | Eng. Co. 11 | Tour 1 | Eng. Co.  6 | Tour 3 |
| F/F  Angelo Capalbo | Eng. Co. 21 | Tour 2 | Eng. Co.  7 | Tour 2 |
| F/F  Tyrone Mitchell | Eng. Co. 21 | Tour 4 | Eng. Co.  7 | Tour 4 |

Notice No. 2003 – 005
January 15, 2003
Page 2

| | | FROM | TO |
|---|---|---|---|
| F/F | Radney Johnson | Trk. Co. 11 Tour 1 | Eng. Co. 11 Tour 1 |
| F/F | William Snyder | Trk. Co.  9 Tour 1 | Eng. Co. 14 Tour 3 |
| F/F | William Mojica | Training Academy | Eng. Co. 16 Tour 3 |
| F/F | Rashad Shahied | Eng. Co. 19 Tour 3 | Eng. Co. 16 Tour 3 |
| F/F | Gary Holmes | Eng. Co. 11 Tour 4 | Eng. Co. 18 Tour 2 |
| F/F | Eugene Brenner | Eng. Co. 21 Tour 2 | Eng. Co. 26 Tour 2 |
| F/F | Carl Schnerig | Eng. Co.  7 Tour 2 | Eng. Co. 26 Tour 2 |
| F/F | John Rispoli | Eng. Co. 17 Tour 2 | Eng. Co. 29 Tour 4 |
| F/F | Michael Reed | Eng. Co. 17 Tour 2 | Rescue      Tour 2 |
| F/F | Gilbert Colon Jr. | Trk. Co.  6 Tour 3 | Rescue      Tour 4 |
| F/F | Bernard J. Dowd | Trk. Co.  4 Tour 1 | Training Academy/Fireboat |
| F/F | Alejandro Cruz | Eng. Co. 10 Tour 4 | Trk. Co.  1 Tour 1 |
| F/F | Hector Lugo | Eng. Co. 16 Tour 4 | Trk. Co.  1 Tour 1 |
| F/F | Sean Williams | Trk. Co.  1 Tour 3 | Trk. Co.  1 Tour 1 |
| F/F | Walter M. Fudali | Trk. Co.  4 Tour 2 | Trk. Co.  4 Tour 1 |
| F/F | Michael Gilbert | Trk. Co.  4 Tour 4 | Trk. Co.  4 Tour 2 |
| F/F | Darius Bishop | Eng. Co. 27 Tour 4 | Trk. Co.  4 Tour 4 |
| F/F | John Wilson | Trk. Co.  5 Tour 1 | Trk. Co.  5 Tour 3 |
| F/F | Anthony Campos | Eng. Co. 26 Tour 2 | Trk. Co.  7 Tour 2 |
| F/F | Jose Cantara | Eng. Co. 18 Tour 1 | Trk. Co.  9 Tour 3 |
| F/F | Albert Downey | Trk. Co.  8 Tour 3 | Trk. Co.  9 Tour 3 |
| F/F | Jerry DeLane | Trk. Co.  9 Tour 1 | Trk. Co. 11 Tour 1 |
| F/F | David Wallace | Trk. Co.  8 Tour 4 | Trk. Co.  9 Tour 2 |
| F/F | Kenneth Reeds | Eng. Co. 19 Tour 2 | Eng. Co. 27 Tour 2 |
| F/F | James Giles | Eng. Co. 29 Tour 2 | Eng. Co. 10 Tour 2 |
| F/F | Dayon Cobbs | Trk. Co. 10 Tour 1 | Trk. Co. 10 Tour 3 |
| F/F | Chris DeMuro | Trk. Co. 10 Tour 3 | Trk. Co. 10 Tour 1 |
| F/F | Wyndell Cooper | Eng. Co. 29 Tour 2 | Eng. Co.  9 Tour 2 |
| F/F | Mark Piserchio | Eng. Co.  9 Tour 2 | Eng. Co. 29 Tour 2 |
| F/F | James Costa | Trk. Co. 11 Tour 2 | Eng. Co. 19 Tour 2 |
| F/F | Gary Holman | Eng. Co. 19 Tour 2 | Trk. Co. 11 Tour 2 |
| F/F | Paul Mazza | Eng. Co.  7 Tour 1 | Eng. Co. 26 Tour 1 |
| F/F | Steve Anderson | Eng. Co. 26 Tour 1 | Eng. Co.  6 Tour 1 |
| F/F | Raymond Hatton | Eng. Co.  6 Tour 1 | Eng. Co. 11 Tour 1 |
| F/F | Bryan Webb | Eng. Co. 11 Tour 1 | Eng. Co.  6 Tour 1 |
| F/F | Deblin Rodriguez | Trk. Co.  7 Tour 3 | Trk. Co. 11 Tour 3 |
| F/F | Harold Bane | Eng. Co. 10 Tour 3 | Eng. Co. 12 Tour 3 |
| F/F | Gerald Highsmith | Eng. Co. 12 Tour 3 | Eng. Co. 10 Tour 3 |
| F/F | Peter Cooney | Eng. Co.  9 Tour 3 | Eng. Co. 15 Tour 3 |
| F/F | Arthur Ciampi | Eng. Co. 28 Tour 4 | Eng. Co. 19 Tour 4 |
| F/F | Kareem Jackson | Eng. Co. 19 Tour 4 | Eng. Co. 28 Tour 4 |
| F/F | Clarence Bruton | Eng. Co. 17 Tour 4 | Eng. Co. 21 Tour 4 |
| F/F | James Willis | Eng. Co. 21 Tour 4 | Eng. Co. 17 Tour 4 |
| F/F | Kevin Johnson | Eng. Co. 12 Tour 4 | Eng. Co. 10 Tour 4 |
| F/F | Charles Lomack | Eng. Co. 19 Tour 4 | Eng. Co. 14 Tour 4 |
| F/F | Manual Rodriguez | Eng. Co.  5 Tour 1 | Eng. Co. 19 Tour 1 |

Notice No. 2003 – 005
January 15, 2003
Page 3

|  | | FROM | TO |
|---|---|---|---|
| F/F | Arthur Garrett | Training Academy | Special Services |
| F/F | Thaddeus Kennedy | Community Relations | Training Academy |
| F/F | Paul Riley | Trk. Co. 7 Tour 4 | Eng. Co. 15 Tour 4 |
| F/F | Jeremias Ocasio Jr. | Trk. Co. 6 Tour 4 | Eng. Co. 18 Tour 4 |

## The following Probationary Firefighters are hereby assigned as noted:

| | FROM | | TO | |
|---|---|---|---|---|
| PF/F Thomas Hodge | Roving | Tour 4 | Eng. Co. 7 Tour 2 |
| PF/F William Boyd | Roving | Tour 3 | Eng. Co. 7 Tour 3 |
| PF/F Daniel Iberer | Roving | Tour 4 | Eng. Co. 11 Tour 4 |
| PF/F Robert Illis | Roving | Tour 4 | Eng. Co. 7 Tour 4 |
| PF/F Thomas Buffaloe | Roving | Tour 4 | Eng. Co. 9 Tour 1 |
| PF/F Jason Jones | Roving | Tour 2 | Trk. Co. 5 Tour 1 |
| PF/F John Meixedo | Roving | Tour 4 | Eng. Co. 9 Tour 4 |
| PF/F Joseph Gethard | Roving | Tour 1 | Eng. Co. 18 Tour 1 |
| PF/F Robert DeFroscia | Roving | Tour 1 | Eng. Co. 12 Tour 4 |
| PF/F Delfin Ortiz | Roving | Tour 2 | Eng. Co. 11 Tour 2 |
| PF/F Reynard Gasvage | Roving | Tour 1 | Eng. Co. 7 Tour 4 |
| PF/F David Rodgers | Roving | Tour 3 | Eng. Co. 12 Tour 3 |
| PF/F Lazaro Rodriguez | Roving | Tour 3 | Eng. Co. 9 Tour 3 |
| PF/F Mark Wolf | Roving | Tour 4 | Trk. Co. 7 Tour 4 |
| PF/F Thomas Jenkins | Roving | Tour 1 | Eng. Co. 16 Tour 1 |
| PF/F Joseph Kostnicka | Roving | Tour 2 | Eng. Co. 16 Tour 2 |
| PF/F Elio Valentin | Roving | Tour 4 | Eng. Co. 16 Tour 4 |
| PF/F Jean Pierre | Roving | Tour 2 | Eng. Co. 17 Tour 2 |
| PF/F Thomas Shea | Roving | Tour 3 | Eng. Co. 17 Tour 2 |
| PF/F Gregory Meehan | Roving | Tour 3 | Trk. Co. 8 Tour 3 |
| PF/F Latina Byrd | Roving | Tour 1 | Eng. Co. 18 Tour 4 |
| PF/F Manuel Viera | Roving | Tour 4 | Trk. Co. 4 Tour 2 |
| PF/F Dean Scalani | Roving | Tour 3 | Eng. Co. 19 Tour 3 |
| PF/F Jose Robles | Roving | Tour 3 | Eng. Co. 21 Tour 2 |
| PF/F David Holmes | Roving | Tour 4 | Eng. Co. 29 Tour 4 |
| PF/F Michael Cravo | Roving | Tour 1 | Eng. Co. 19 Tour 2 |
| PF/F Angel Rosario | Roving | Tour 3 | Trk. Co. 1 Tour 3 |
| PF/F Luis Sanabria | Roving | Tour 4 | Trk. Co. 1 Tour 4 |
| PF/F William Castro | Roving | Tour 4 | Trk. Co. 4 Tour 1 |
| PF/F Ernest Lunetta | Roving | Tour 2 | Trk. Co. 4 Tour 2 |
| PF/F Oswald Robeto | Roving | Tour 2 | Trk. Co. 6 Tour 4 |
| PF/F James Kupko | Roving | Tour 4 | Trk. Co. 4 Tour 4 |
| PF/F Lonzia Ellison | Roving | Tour 1 | Trk. Co. 11 Tour 1 |
| PF/F Clarence Sims | Roving | Tour 3 | Trk. Co. 5 Tour 3 |
| PF/F Douglas Jones | Roving | Tour 2 | Trk. Co. 6 Tour 2 |
| PF/F Jose Alves | Roving | Tour 1 | Trk. Co. 8 Tour 1 |
| PF/F Wilfredo Rivera | Roving | Tour 3 | Eng. Co. 17 Tour 3 |
| PF/F Cornell Roper | Roving | Tour 3 | Trk. Co. 8 Tour 3 |

Notice No. 2003 – 005
January 15, 2003
Page 4

|  | | FROM | | TO | |
|---|---|---|---|---|---|
| PF/F Julio Gonzalez | Roving | Tour 1 | Trk. Co.  8 | Tour 4 |
| PF/F Kamal Brown | Roving | Tour 1 | Trk. Co.  9 | Tour 1 |
| PF/F Jose Garcia | Roving | Tour 1 | Trk. Co.  9 | Tour 1 |
| PF/F Anthony Magliacano | Roving | Tour 2 | Eng. Co. 29 | Tour 2 |
| PF/F Reinaldo Martinez | Roving | Tour 2 | Trk. Co. 10 | Tour 2 |
| PF/F Shannon McTige | Roving | Tour 2 | Trk. Co. 10 | Tour 2 |
| PF/F David Mickel | Roving | Tour 3 | Rescue | Tour 3 |
| PF/F Krzysztof Sroka | Roving | Tour 4 | Trk. Co. 11 | Tour 4 |
| PF/F Claudino Dominguez | Roving | Tour 1 | Eng. Co. 7 | Tour 1 |
| PF/F Marshall Richardson | Roving | Tour 2 | Trk. Co. 12 | Tour 2 |

**Future transfer requests will not be accepted until further notice.**

/s/
EDWARD J. DUNHAM
FIRE DIRECTOR

EJD:dg"

By order of the Honorable Edward J. Dunham, Fire Director of the Newark Fire Department through Lowell F. Jones, Fire Chief.

LOWELL F. JONES
FIRE CHIEF

LFJ:dg